JAMAR BOWLES                                    *       IN THE
17 Liberty Place
Baltimore, Maryland 21224                       *       UNITED STATES

     Plaintiff                 *       DISTRICT COURT
v.
                                                *       FOR THE DISTRICT

OFFICER DANIEL HERSL
1900 W. Sunshine Street                         *       OF MARYLAND
Springfield, MO 65807
Individually and as a police officer for        *
BALTIMORE CITY POLICE DEPT.
                                                *       Case No.:
AND
                                                *
SRGT. JOHN BURNS
601 E. Fayette Street                           *
Baltimore, Maryland 21202
Individually and as a police officer for        *
BALTIMORE CITY POLICE DEPT.
                                                *
AND
                                                *
OFFICER STEPHEN A. ROMEY
601 E. Fayette Street                           *
Baltimore, Maryland 21202
Individually and as a police officer for        *
BALTIMORE CITY POLICE DEPT.
                                                *
AND
                                                *
OFFICER PETER IACOVO
601 E. Fayette Street                           *
Baltimore, Maryland 21202
Individually and as a police officer for        *
BALTIMORE CITY POLICE DEPT.
                                                *
AND
                                                *
JORDAN MOORE
601 E. Fayette Street                           *
Baltimore, Maryland 21202
Individually and as a police officer for        *
BALTIMORE CITY POLICE DEPT.

AND                                                     *

TIMOTHY ROMEO                                           *
601 E. Fayette Street
Baltimore, Maryland 21202                               *
Individually and as a police officer for               *
BALTIMORE CITY POLICE DEPT.

                                                        *
AND
                                                        *
HOWARD ILGENFRITZ                                       *
601 E. Fayette Street
Baltimore, Maryland 21202                               *
Individually and as a police officer for               *
BALTIMORE CITY POLICE DEPT.

                                                        *
AND
                                                        *
BALTIMORE CITY POLICE DEPT.                             *
S/O: Michael S. Harrison, Police Comm.
601 E. Fayette Street                                   *
Baltimore, Maryland 21202                               *

     Defendants.                                        *
*      *      *      *      *      *      *      *      *      *      *      *      *

## COMPLAINT

**COMES NOW** Plaintiff Jamar Bowles (hereinafter "Mr.  Bowles," "Plaintiff," and

"Plaintiff Bowles"), by and through his attorney, Esquire, Hannah M. Ernstberger, Esquire, and

the law office of Saller, Lord, Ernstberger & Insley, and complaining of the acts of the Defendants

alleges and states as follows:

## COMPLAINT AND JURY TRIAL DEMAND

**COMES NOW** Plaintiff Jamar Bowles (hereinafter "Mr.  Bowles," "Plaintiff," and

"Plaintiff Bowles"), by and through his attorney Hannah M. Ernstberger, Esquire, and the law

office of Saller, Lord, Ernstberger & Insley, and complaining of the acts of the Defendants alleges

and states as follows:

2

## INTRODUCTION

In this action, Plaintiff Bowles seeks compensatory and punitive damages as well as other relief pursuant to 42 U.S.C. § 1983, 42 U.S.C. §1985, the Fourth Amendment to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law, for the unconstitutional and unlawful conduct of the Defendants. The actions of the Defendants as detailed herein deprived Plaintiff Bowles of his civil rights and constitute egregious and objectively unreasonable violation of his rights under the Fourth Amendment to the United States Constitution, Article 24 of the Maryland Constitution and Maryland law. Numerous Defendants participated in Plaintiff Bowles being unlawfully stopped, unconstitutionally searched, and illegally arrested after drugs were planted by the Officer Defendants. Defendant Baltimore Police Department was aware of the custom of violating citizens' civil rights and condoned, or otherwise failed to adequately supervise, such actions. In this instance of carrying out the custom, Plaintiff Bowles had his civil rights violated when he was illegally stopped, searched, arrested and prosecuted for crimes which he did not commit, but instead were fabricated by the Officer Defendants.

## PARTIES

1.      Plaintiff, Jamar Bowles, is a 38-year-old, African American citizen of the United States residing at 17 Liberty Place, Baltimore, Maryland 21244.

2.      Defendant Officer Daniel Hersl (hereinafter "Officer Hersl," "Defendant Hersl," or collectively with other named officers as "Officer Defendants") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as an officer and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Hersl was on duty and participated in the stop, apprehension, and arrest of Plaintiff Bowles on August 2, 2013, and March 5, 2014, and the subsequent prosecution thereof. Defendant Hersl is sued in his individual and official

capacity under 42 U.S.C. § 1983, 42 U.S.C. §1985, the Fourth Amendment to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

3.      Defendant Officer John Burns (hereinafter "Officer Burns," "Defendant Burns," or collectively with other named officers as "Officer Defendants") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as a police officer and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Burns was on duty and participated in the stop, apprehension, and arrest of Plaintiff Bowles on August 2, 2013, and March 5, 2014, and the subsequent prosecution thereof. Defendant Burns is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Fourth Amendment to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

4.      Defendant Officer Stephen Romey (hereinafter "Officer Romey," "Defendant Romey," or collectively with other named officers as "Officer Defendants") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as an officer and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Romey was on duty and participated in the stop, apprehension, and arrest of Plaintiff Bowles on August 2, 2013, and the subsequent prosecution thereof. Defendant Romey is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. §1985, the Fourth Amendment to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

5.      Defendant Officer Peter Iacovo (hereinafter "Officer Iacovo," "Defendant Iacovo," or collectively with other named officers as "Officer Defendants") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as an officer and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Iacovo was on duty and participated in the stop, apprehension, and arrest of Plaintiff Bowles on March 5, 2014, and the subsequent prosecution thereof. Defendant Iacovo is sued in his individual and official capacity under

42 U.S.C. § 1983, 42 U.S.C. §1985, the Fourth Amendment to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

6.   Defendant Officer Jordan Moore (hereinafter "Officer Moore," "Defendant Moore," or collectively with other named officers as "Officer Defendants") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as a police officer and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Moore was on duty and participated in the stop, apprehension, and arrest of Plaintiff Bowles on March 5, 2014, and the subsequent prosecution thereof. Defendant Moore is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Fourth Amendment to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

7.   Defendant Officer Timothy Romeo (hereinafter "Officer Romeo," "Defendant Romeo," or collectively with other named officers as "Officer Defendants") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as a police officer and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Romeo was on duty and participated in the stop, apprehension, and arrest of Plaintiff Bowles on March 5, 2014, and the subsequent prosecution thereof. Defendant Romeo is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Fourth Amendment to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

8.   Defendant Officer Howard Ilgenfritz (hereinafter "Officer Ilgenfritz," "Defendant Ilgenfritz," or collectively with other named officers as "Officer Defendants") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as a police officer and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Ilgenfritz was on duty and participated in the stop, apprehension, and arrest of Plaintiff Bowles on March 5, 2014, and the subsequent prosecution thereof. Defendant Ilgenfritz is sued in his individual and official capacity

under 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Fourth Amendment to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

9.      Defendant Baltimore City Police Department (hereinafter "BPD") is an agency of the State of Maryland. The BPD is responsible for providing police and law enforcement services for the City of Baltimore and for investigating crimes that occur within the City. The BPD has its principal offices at 242 West 29th Street, Baltimore, Maryland 21211-2908. Upon information and belief, the BPD reposed decision-making authority regarding police officer training and supervision. The BPD is a local agency for the purposes of the Local Government Tort Claims Act.

10.      Though it has long been noted by the courts that Defendant BPD is customarily a state agency rather than an agency of a county or municipality, and therefore enjoys the protection of sovereign immunity, this Court has determined that Defendant BPD is a suable entity under 42 U.S.C. § 1983. *Hector v. Weglein*, 558 F. Supp. 194, 197-99 (D. Md. 1982), see also *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 547-48 (D. Md. 2003). The Court ruled Defendant BPD is "so connected with the government of Baltimore City to such an extent as to prevent the Police Department from asserting an Eleventh Amendment immunity." *Chin* at 548.

11.      Regarding Plaintiff's state claims, Defendant BPD is sued pursuant to 42 U.S. § 1983, § 1985, and § 1988, as individual Defendants were acting under color of state law and subjected Plaintiff to deprivation of his civil rights under the United States Constitution.

12.      Defendant BPD conspired with the Officer Defendants to encourage, tolerate, ratify, and be deliberately indifferent to the following patterns, practices, and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

    a.   The improper exercise of police powers, including but not limited to the unreasonable unlawful arrest, planting evidence, and violations of citizens' Constitutional rights,

6

particularly in connection with unlawful search and seizure, and racially motivated acts by its police officers;

b.  The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

c.  The failure to identify and take remedial or disciplinary action against police officers who were subject of prior or internal complaints of misconduct;

d.  Police Officers' use of their status as police officers to employ the use of excessive force and unlawful arrest, unlawful search and seizure, or to achieve ends not reasonably related to their police duties; and

e.  The failure of police officers to follow established policies, procedures, directives and instructions regarding he arrest, detention, pursuit, search and seizure, duty to rescue and prevent unnecessary bodily harm, use of force and arrest powers under such circumstances as presented herein.

13.  Prior to August 2, 2013, Defendant BPD had actual or constructive knowledge that Officer Defendants, and other police officers of Defendant BPD were engaged in conduct that posed pervasive and unreasonable risk of constitutional injury to residents and citizens within the jurisdiction of the City of Baltimore but failed to take appropriate and adequate remedial action against these police officers to prevent the injuries suffered by the Plaintiff. Defendant BPD implemented a policy and custom of condonation or deliberate indifference to police misconduct, had a custom or policy of failing to train its officers adequately, and failed to adequately supervise Defendants Shetterly and Giordano.

14.  Defendant BPD's directives and failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

7

15.     At all times the actions and practices of the Defendants named herein and those acting at their direction, were performed under the color of state law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

16.     The above and all other allegations herein are incorporated by reference as if fully set forth.

17.     This case presents an actual case and controversy arising under the Fourth Amendment to the United States Constitution and asserts claims for relief 42 U.S. § 1983, and § 1985, as well as claims for relief under Article 24 of the Maryland Constitution, and Maryland State Law.

18.     Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and § 1343. This Court also has supplemental jurisdiction over the state law claims against the individual Defendants pursuant to 28 U.S.C. § 1367.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) inasmuch as Plaintiff's causes of action arose in the District of Maryland, and at all times relevant to this action all the Defendants were found in this District.

20.     Plaintiff complied with the notice requirements of the Local Government Tort Claims Act by providing notice of his claim to the Baltimore City Law Department on or about November 13, 2020, less than a year from the date on which his convictions were vacated.

## FACTUAL ALLEGATIONS

21.     The above and all other allegations herein are incorporated by reference as if fully set forth.

22.     At all times relevant, Officer Defendants, were employed as officers of Defendant Baltimore City Police Department.

8

23.     At all times during the course of these events, Defendant BPD had advance notice that members of its force engaged in illegal acts while in the course of their employment. This notice included, but was not limited to, officers planting evidence, stealing of money from citizens, and using excessive force.

24.     Defendants BPD implemented a policy or custom of condonation or deliberate indifference to the use of planted evidence, illegal search and seizures, and misuse of police powers by Defendant BPD officers.

25.     Defendant BPD failed to adequately supervise Defendant BPD's officers in proper arrest, search and seizure, and use of police powers.

26.     Each of these factual allegations are supported by the incidents detailed below, which articulate BPD's failure to supervise its officers even in the face of obvious issues, and the complaint set forth herein.

### Gary Brown Incident

27.     On June 8, 2009, at the intersection of West Lafayette Street and North Eutaw Street in Baltimore, Maryland, Officers Jamel Rayam and Jason Giordano of Defendant BPD were on patrol in plain clothes as part of the Northern District Drug Unit.

28.     The two officers see another officer they believed to be Office Michael Sylvester engaged in a traffic stop in plain clothes.  Officers Rayam and Giordano verify Officer Sylvester's identity and assist in the stop.

29.     The driver, Mr. Gary Brown, and his passenger were removed and handcuffed.

30.     In the course of the stop, over $11,000 in cash was stolen from the vehicle. The money was traced to the legitimate refinance of a house with a "cash out" of equity.

31.     On June 11, 2009, Gary Brown made a formal complaint for the theft. Mr. Brown detailed that all three officers discussed the money with him and threatened him with unlawful police actions, i.e. executing fraudulent search warrants on his house.

32.     On August 27, 2009, complainant Gary Brown took and passed a polygraph examination regarding his interaction with the officers on June 8, 2009, including the stolen money.

33.     On that same day Officer Sylvester cashed a "negotiable instrument" at M&T Bank in the amount of $10,842.00.  The same day he deposited $6,000.00, all in $100 bills, into an account at Destinations Federal Credit Union.

34.     On September 8, 2009, a copy of the case file was given to Assistant State's Attorney Doug Ludwig of Baltimore City State's Attorney's Office's Police Integrity Unit. Included were the polygraph results.

35.     Despite the fact that the investigation by Defendant BPD was still ongoing and the officers were not yet cleared of any wrongdoing, on June 14, 2010, Baltimore City State's Attorney's Office's Doug Ludwig sent a letter to Internal Affairs stating Baltimore City State's Attorney's Office would not be pursuing charges against the officers involved in the theft.

36.     On July 14, 2010, Officers Rayam and Giordano were ordered to take a polygraph test. The test showed a greater than 99% chance that they were being deceptive about the on-duty armed robbery of Mr. Gary Brown. (Exhibit 1).

37.     Despite the polygraph failures, Officers Rayam and Giordano were permitted to continue policing the streets of Baltimore.

## Gary Clayton Case

38.     On May 4, 2015, Baltimore City State's Attorney's Office filed an indictment in case number 115124016 against Gary Clayton.  The case was brought by the Gun Trace Task Force.

39.     On November 12, 2015, Mr. Clayton's counsel. Ms. Staci L. Pipkin, filed a Motion for Franks Hearing, challenging the veracity of the affidavit in support of a search warrant that was applied for, and subsequently issued to the Gun Trace Task Force. (Exhibit 2)

40.     The attached affidavit in support of the Motion for Franks Hearing alleged that Officer Jenkins needlessly pulled his gun and put it in Kimberly Demory's face when she asked Officer Jenkins for credentials and subsequently denied her the asthma inhaler when she began having an attack from the stress of the encounter.  In addition, Ms. Demory contended that one of the members was wearing an ATF shirt, impersonating a Federal Agent.

41.     The Franks Hearing occurred on November 12, 2015, in front of the Honorable Barry G. Williams. The Office of the State's Attorney for Baltimore City was represented by Assistant State's Attorney Kent Grasso. Judge Williams found Officer Jemel Rayam's testimony to be not credible in relation to numerous factual allegations he made. Judge Williams granted Ms. Pipkin's Motion and the warrant was deemed invalid based on numerous factual misrepresentations by Gun Trace Task Force member Officer Jemel Rayam.

42.     Baltimore City State's Attorney's Office entered Nolle Prosequi to the indictment on the same day.

43.     On January 12, 2016, Baltimore City State's Attorney's Office's Kent Grasso sent a memo to Stacy Ann Lewellyn, Chief of the Police Integrity Unit of Baltimore City State's Attorney's Office, Cynthia Banks, and MiaBeth Marosy detailing the troubling events of the Franks Hearing. (Exhibit 3)

11

44.    On January 21, 2016, StacyAnn Llewellyn sent a "Memo of Referral" to Defendant Warfield, the Head of Defendant BPD Internal Affairs Division outlining the concerns the Office had with Gun Trace Task Force member Rayam. (Exhibit 4) The memo states that Baltimore City State's Attorney's Office would be making disclosures to defendants and their counsel about Gun Trace Task Force Member Jemel Rayam in cases "where Jemel Rayam is an essential witness."

45.    Despite the concerns raised by the Baltimore City State's Attorney's Office, Officer Jenkins was permitted to continue policing the streets of Baltimore.

### Rakeem Douglas Case

46.    On November 7, 2016, Baltimore City State's Attorney's Office brought Rakeem Douglas to trial in case number 816281001. The case originated in District Court under Case number 0B02334234. All police involved were members of the Baltimore Police Department, including Jemel Rayam, Maurice Ward, and Wayne Jenkins. Baltimore City State's Attorney's Office dropped Jemel Rayam from their witness list when the case was sent from District Court to Circuit Court for a jury trial.

47.    Rakeem Douglas was represented by long term member of the Baltimore City defense bar, Mr. Lawrence Rosenberg.  Mr. Rosenberg remembered the 2009 disclosure that previous State's Attorney's Administrations had disclosed.  When he asked for it in his matter with Mr. Douglas, he was informed that the State did not deem Jemel Rayam as an "essential witness" so they would not be calling him, thus the disclosure was immaterial.

48.    Despite this glaring omission made by the Baltimore City State's Attorney's Office, which would have been made known to Baltimore Police Department, Defendant BPD took no corrective actions.

### Kendall English Case

49.     On July 24, 2015, Kendell English was charged in the District Court under case number 6B02303755 for illegal firearms possession and related counts.  He was indicted on August 20, 2015, under case number 115230019.

50.     On September 26, 2016, Mr. English, by and through counsel, Karyn Merriweather, filed a Motion to Disclose the Confidential Informant cited by the Gun Trace Task Force, in their Application for a Search and Seizure warrant in the case. (Exhibit 5)

51.     On October 18, 2016, Baltimore City State's Attorney's Office filed an objection to defense's motion to disclose the CI that Jemel Rayam and the Gun Trace Task Force alleged gave them information used as the basis of the warrant. (Exhibit 6)

52.     On December 9, 2016, Judge Lawrence P. Fletcher-Hill denied the defense motion. (Exhibit 7)

53.     On September 26, 2016, Defense counsel Karyn Merriweather filed a motion to compel discovery in the form of a request that the Internal Affairs Division file of Gun Trace Task Force Member Jemel Rayam be disclosed. Despite this being eight months after ASA StaciAnn Llewellyn's memo to Defendant Warfield, Baltimore City State's Attorney's Office not only had not been giving the disclosure to defendants, they were actively fighting them in court.

54.     At the hearing Defense Counsel proffered to the court that another lawyer had received a disclosure about Jemel Rayam that had bearing on his credibility. Due to the non-disclosure agreements defense attorneys are required to sign before they view police personnel records, the attorney could not provide specifics.

55.     Nevertheless, Ms. Merriweather persisted by offering the entire transcript of Jemel Rayam's testimony in the Franks Hearing from Gary Clayton's case.

56.     Baltimore City State's Attorney's Office objected to the disclosure.

57.     The Honorable Jeannie Hong of the Circuit Court for Baltimore City ruled in the State's favor. Stating specifically in her order, "There is no indication that Defendant BPD conducted an Internal Affairs of Officer Rayam concerning his testimony in the case."  Once again this was eight months after ASA StaciAnn Llewellyn sent her memo to Defendant Warfield of the Internal Affairs Division. (Exhibit 4)

58.     Again, Ms. Merriweather persisted and she filed a Motion for a Franks Hearing challenging the veracity of the Gun Trace Task Force, specifically Jemell Rayam, in the affidavit in support of the search warrant used in the case.

59.     Baltimore City State's Attorney's Office objected to the disclosure.

60.     One of the allegations in the subsequent indictment of the Gun Trace Task Force in the United States District Court is that they routinely falsified affidavits for search warrants.

## United States Department of Justice Investigation into Baltimore City Police Department

61.     On or about August 10, 2016, the United States Department of Justice announced in a 163 page report the outcome of the Department's investigation of Defendant BPD. (Exhibit 8)

62.     The Department of Justice concluded that "there is reasonable cause to believe that BPD engages in a pattern or practice of conduct that violates the Constitution or federal law. BPD engages in a pattern or practice of:

a.      Making unconstitutional stops, searches, and arrest;

b.      Using enforcement strategies that produce severe and unjustified disparities in the rates of stops, searches and arrests of African Americans'

c.      Using excessive force; and

d.      Retaliating against people engaging in constitutionally-protected expression."
(Exhibit 8, pg. 3)

63.      In regard to discrimination against African Americans, the report specifically found that "racial disparities in BPD's arrests are most pronounced for highly discretionary offenses: African Americans accounted for 91 percent of the 1,800 people charged solely with "failure to obey" or "trespassing"; 89 percent of the 1,350 charges for making a false statement to an officer; and 84 percent of the 6,500 people arrested for "disorderly conduct."" (Exhibit 8, pg. 7)

64.      In regard to BPD's training of its officers, the report specifically found that "BPD's inadequate policies and training contribute to the Department's pattern or practice of constitutional violations." (Exhibit 8, pg. 129).

65.      Additionally, in regard BPD's supervision of its officers, the report states "Serious deficiencies in BPD's supervision of its enforcement activities, including through data collection and analysis, contribute to the Department's failure to identify and correct unconstitutional policing." (Exhibit 7, pg. 134). Specifically, "[r]elated to BPD's failure to supervise its officers and collect data on their activities, the Department lacks an adequate early intervention system, or EIS, to identify officers based on patterns in their enforcement activities, complaints, and other criteria." (Exhibit 8, pg. 135).

66.      Finally, the report made a number of findings regarding BPD's failure to hold officers accountable for misconduct, noting "BPD relies on deficient accountability systems that fail to curb unconstitutional policing." (Exhibit 8, pg. 139).

67.      Specifically, the report noted that Defendant BPD "fails to engage in effective community policing," instead it is "overly focused on narcotics enforcement, gun recovery, and 'clearing corners.'" (Exhibit 8, pg. 156)

## Federal Criminal Proceedings Against the Gun Trace Task Force

68.    In March 2017, the United States' Attorney's Office located in Baltimore, Maryland announced its indictment of seven of Defendant BPD's officers, including Defendant Hersl.

69.    Subsequently, a number of the officers pleaded guilty and others were found guilty at trial in front of this Court.

70.    On or about July 21, 2017, Evodio Hendrix and Maurice Ward pleaded guilty to racketeering conspiracy. Both officers were subsequently sentenced to seven years in prison each.

71.    On or about August 30, 2017, Sergeant Thomas Allers, former officer in charge of other indicted BPD members, was arrested on racketeering charges.

72.    On or about October 9, 2017, Jemell Rayam plead guilty to a number of charges.

73.    On or about October 11, 2017 Momodu Gondo plead guilty.

74.    On or about December 6, 2017, Thomas Allers pleaded guilty to racketeering conspiracy. Thomas Allers was subsequently sentenced to 15 years in prison.

75.    On or about January 5, 2018, Wayne Jenkins pleaded guilty to racketeering conspiracy, racketeering, robbery, destruction, alteration, of falsification of records in a federal investigation, and deprivation of rights under color of law. Officer Jenkins was subsequently sentenced to 25 years in prison.

76.    On or about February 12, 2018, Marcus Taylor and Defendant Hersl were found guilty on two counts of racketeering conspiracy, racketeering aiding and abetting, racketeering and robbery. Marcus Taylor and Daniel Hersl were each subsequently sentenced to 18 years in prison.

77.    Prior to the March 2017 indictments, Plaintiff, along with the general public, was not aware of the pattern and practice of systemic rights violations being committed by the

indicted officers, or their concealment thereof. Plaintiff was also unaware of Defendant BPD's ongoing concealment of such actions and Defendant BPD's continued failure to train, supervise, and discipline.

### Baltimore Police Department's History of Failing to Supervise Officer Defendants

78.     Prior to 2006, Defendant Hersl was involved in a situation in which, while off-duty, he poured a beer on a woman's head and threw a bottle that struck her in the face. The subsequent internal affairs complaint was sustained. Defendant Hersl remained on the force.

79.     . In April 2006, the Baltimore Sun published an article titled "Unreturned Warrants Indicate a Bigger Issue." The article discusses two letters sent to Defendant Hamm, one by a local defense attorney and one by the administrative judge of the Baltimore District Court. The attorney's letter addressed the 29 internal affairs complaints against Defendant Hersl. Defendant Hersl remained on the force.

80.     In March 2008, the Baltimore Sun published an article regarding a dropped case against three East Baltimore men. The article, titled "Drug Case Falls Apart," details how the case was dropped after Defendant Hersl's lengthy Internal Affairs file was disclosed to the jurors. The article then notes one of the involved defense attorneys "sent a letter to police Commissioner Leonard D. Hamm, asking him to audit his officers' personnel files."

81.     In June 2015, the Baltimore Sun published an article concerning a number of lawsuits brought against Baltimore Police Department officers, including Defendant Hersl. The article, titled "Baltimore Police Officers Who were Sued," notes three separate lawsuits brought against Defendant Hersl for his wrongdoing.

      a.   In 2007, Defendant Hersl falsely arrested a woman for selling drugs when she was, in fact, selling church raffle tickets. The woman spent two days in jail until prosecutors dropped the charges.

    b.  In 2008, Defendant Hersl broke the arm of a young woman while he searched for another individual in a carryout store.

    c.  In 2010, Defendant Hersl violently broke the jaw and nose of a man and charged him with possessing drugs.

    d.  Defendant Hersl remained on the force.

82.    In May 2014, Defendant Moore shot a fleeing man in the back of the neck, claiming the man brandished a gun. Defendant Moore remained on the force.

## PLAINTIFF'S CASE

83.    On or about August 2, 2013, Plaintiff was walking in the area of 2300 Aisquith Street, in City of Baltimore, State of Maryland.

84.    As Plaintiff was walking, Defendants Hersl, Romey and Burns, who were wearing plain clothes, approached Plaintiff in an unmarked vehicle.

85.    Suddenly and without reason, Defendants detained, seized, and arrested Plaintiff without an arrest warrant, without a search warrant, without exigent circumstances, without reasonable suspicion, without consent, and without probable cause to believe that Plaintiff was committing or had committed a crime.

86.    Defendants Officers claimed to have witnessed Mr. Bowles place a 'white box into a rear block wall' and drop two 'clear bags containing green plant material (suspected marijuana) to the ground,' which they claimed to have recovered after arresting Plaintiff. Defendants alleged the white box contained suspected cocaine. (*See* Exhibit 9, Statement of Probable Cause).

87.    Plaintiff was not, at any time relevant hereto, in possession of marijuana, cocaine, or any other illegal substance.

88.     At the time of his arrest, Plaintiff was without sufficient factual basis to determine whether Officer Defendants had merely found narcotics which they misattributed to him or whether the Officer Defendants engaged in the manufacturing of evidence.

89.     Mr. Bowles was subsequently charged with two counts of violating Maryland Annotated Criminal Code Section 5-602 (Distributing, possessing with intent to distribute, or dispending controlled dangerous substance) and three counts of violating Maryland Annotated Criminal Code Section 5-601 (Possessing or administering controlled dangerous substance) in the Baltimore City District Court of Maryland, Case Number 3B02232450.

90.     Mr. Bowles was held in state custody on August 4, 2013, when he was released on bail, pending trial.

91.     On or about September 26, 2013, Mr. Bowles was indicted on the charges and the case was transferred to the Circuit Court for Baltimore City, Case Number 113239020.

92.     On or about March 5, 2014, while out on bail, Mr. Bowles was riding as a passenger in a vehicle with two other men when the vehicle was stopped by unknown officers in a marked patrol vehicle.

93.     Defendants Burns, Romeo, and Moore ordered the men, including Mr. Bowles, out of the vehicle and subsequently searched and frisked the three men. No illegal items were recovered.

94.     Defendants Hersl and Iacovo then arrived on scene, at which time Defendant Hersl took Mr. Bowles into an alley and placed narcotics in Mr. Bowles sock.

95.     After being escorted back to the scene by Defendant Hesrl, Defendant Moore searched Mr. Bowles and located the 'suspected cocaine' in his left sock.

96.     Defendant Hersl then detained, seized, and arrested Plaintiff and the other men without an arrest warrant, without a search warrant, without exigent circumstances, without

reasonable suspicion, without consent, and without legitimate probable cause to believe that Plaintiff was committing or had committed a crime.

97.     Subsequently, a search of the vehicle allegedly produced suspected marijuana.

98.     Mr. Bowles was subsequently charged with two counts of violating Maryland Annotated Criminal Code Section 5-602 (Distributing, possessing with intent to distribute, or dispending controlled dangerous substance) and two counts of violating Maryland Annotated Criminal Code Section 5-601 (Possessing or administering controlled dangerous substance) in the Baltimore City District Court of Maryland, Case Number 3B02255753.

99.     Mr. Bowles was held pending trial.

100.    On or about March 36, 2014, Mr. Bowles was indicted on the charges and the case was transferred to the Circuit Court for Baltimore City, Case Number 114084013.

101.    On September 11, 2014, Mr. Bowles entered a plea of guilty to count one of case number 1132239020 and to count one of case number 114084013, both violations of section 5-602, for which he received a six-year sentence. (*See* Exhibit 10, State's Motions to Vacate Judgment).

102.    Mr. Bowles served his part of his sentence, until he was released on parole in January 2016 for good behavior.

103.    On October 2, 2019, the State's Attorney for Baltimore City filed a Motion to Vacate Judgment in the Case Number 11323902 and Case Number 114084013, seeking to vacate Plaintiff's criminal convictions. (*See* Exhibit 10).

104.    On or about November 19, 2019, the Motions were granted by the Circuit Court for Baltimore City and a verdict of nolle prosequi was entered. Mr. Bowles was subsequently released from parole.

## COUNT I
### (Malicious Prosecution in Violation of the Fourth Amendment Pursuant to 42 U.S.C. §1983, 1985– All Defendants)

105.   The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

106.   Plaintiff hereby alleges that the institution and continuation of criminal proceedings by way of case numbers 113239020 and 114084013 was without probable cause.

107.   Officer Defendants initiated criminal proceedings against Plaintiff after having manufactured evidence, and without probable cause.

108.   The prosecution was instituted with malice or purpose other than to bring the defendant of those cases to justice. The other purposes include financial gain, recognition, and masking police misconduct.

109.   Officer Defendants knew the alleged evidence was fabricated as they each actively engaged in fabricating the evidence or were aware of the fabrication and failed to take action against the fabrication.

110.   Despite a lack of probable cause, Officer Defendants pursued a conviction in said criminal proceedings by swearing out false charges and signing false statements of probable cause. The providing of false information was malicious, willful, and intentional and was for purposes other than to bring the defendant of those cases to justice.

111.   The proceedings terminated in Plaintiff's favor after the State's Attorney for Baltimore City's Motions to Vacate Judgment were granted and a verdict of nolle prosequi was entered on or about November 19, 2019.

112.   As a result of the Officer Defendants' actions, Plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceedings.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

<u>**COUNT II**</u>
**(Violation of Maryland Declaration of Rights – Officer Defendants)**

113.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

114.     At all times relevant to this Complaint, Officer Defendants were acting under the color of state law as an Officer employed by Defendant BPD.

115.     Plaintiff submits these claims against the Officer Defendants under Article 24 of the Maryland Declaration of Rights.

116.     Plaintiff incorporates all allegations, including those in the aforementioned claim of malicious prosecution, under this claim, and reiterated that Plaintiff has contended violations of Article 24 throughout this Complaint.

117.     Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

118.     Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

119.     This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT II
### (Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985– Defendant BPD)

120.     The above and all other paragraphs herein are incorporated by reference as if fully set forth.

121.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

122.     After indictments were unsealed in the United States District Court for the District of Maryland, Plaintiff became aware that Officer Defendants had a long documented disciplinary record of violating the civil rights of Baltimore City residents including, but not limited to, an overwhelming number of Internal Affairs complaints, in addition to a number of settled lawsuits alleging this conduct by the named Officer Defendants, particularly Defendant Hersl. The policy and practice of returning these Officers to their normal employment with the BPD without adequate training and supervision made the violation of Plaintiff and other citizens' rights not a mere possibility, but a certainty.

123.     At all relevant times, Defendant BPD, directly and through its employees, agents, and deputies, had an obligation to ensure that its employees, agents, and deputies exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under its direction and control.

124.     Upon information and belief, the supervision provided and/or required by Defendant BPD regarding proper arrest procedures and use of police powers was inadequate, insufficient, or nonexistent, and Defendant BPD, directly and through its employees, agents and

deputies, failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

125.    As alleged herein, Officer Defendants, and other officers of its force, and thereby, Defendant BPD have engaged in a pattern, practice, policy, or custom of allowing BPD officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly supervise Defendant BPD officers in the proper arrest procedures and use of police powers.

126.    It was readily foreseeable and highly predictable that failing to properly supervise Defendant BPD's officers in the proper arrest procedures and use of police powers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant BPD was indifferent to same.

127.    As alleged herein, the actions by all named Defendants were unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant BPD's failure to adequately supervise its officers.

128.    As a direct and proximate result of Defendant BPD's failure to adequately supervise its officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

129.    Defendant BPD's failure to properly supervise its officers and employees was tantamount to deliberate indifference.

130.    Defendant BPD's failure to adequately supervise further confirms the aforementioned pattern and practice.

131.    As alleged herein, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to fabricate evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

132.    Defendant BPD was aware, and should have foreseen, that Defendant BPD's officers would confront situations as that presented by Plaintiff.

133.    Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein, have previously been experienced by Defendant BPD and have been similarly mishandled by Defendant BPD as alleged herein.

134.    Defendant BPD's improper handling of incidents of planted evidence, illegal arrest and improper use of police powers committed by Defendant BPD's officers such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

135.    As a direct and proximate result of Defendant BPD's deliberate indifference to the supervision of its officers and employees as herein detailed, Plaintiff has been injured, and continues to suffer injury.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues of fact in this case.

Respectfully Submitted,

_____/s/ Hannah M. Ernstberger_
Hannah M. Ernstberger, #20516
Saller, Lord, Ernstberger & Insley
12 S. Calvert Street, 2nd Floor
Baltimore, MD 21202
(410) 783-7945